# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE WILLIAM JOSEPH MILLER, JR. AND MARY O'BRIEN MILLER <br><br> DEBTORS. | Case No.: RWT 10cv2466 <br> Bankr. Case No. PM 08-10543 (Chapter 7) |

## MEMORANDUM OPINION

William Joseph Miller, Jr. and Mary O'Brien Miller ("Appellants"), acting *pro se*, seek review of the Bankruptcy Court's order authorizing Trustee Janet Nesse ("Trustee") to sell shares of The Oaks, Inc., a real estate corporation whose sole asset is a 4.5 acre tract of land in Ellicott City, Maryland. Because this Court lacks jurisdiction to hear this appeal, it shall be dismissed.

## BACKGROUND

On January 14, 2008, Appellants, acting *pro se*, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. *In re William Joseph Miller, Jr. and Mary O'Brien Miller*, Case No. 08-10543-PM (Chapter 7). Appellee Janet M. Nesse was appointed Trustee by the United States Bankruptcy Court for the District of Maryland. On January 30, 2008, Appellants filed a Statement of Financial Affairs along with Schedules A-J. ECF No. 1-2. On Schedule B – Personal Property, the Debtors listed "The Oaks, Inc. Stock" as joint property, and claimed that the value of such stock was $282,820.00. *Id.* at 5. On Schedule E – Creditors Holding Unsecured Priority Claims, Appellants listed two liens filed by the Internal Revenue Service on September 18, 2007, which totaled $289,573.41. *Id.* at 11. On Schedule E, Appellants also listed two disputed claims held by the Comptroller of Maryland which totaled $400,000.00.

On March 4, 2008, the Trustee conducted a meeting of creditors pursuant to 11 U.S.C. § 341, at which Mr. Miller, in response to questioning by the Trustee, indicated that "The Oaks, Inc. Stock" owned approximately four and a half acres of land in Ellicott City, Maryland. ECF No. 1-25, at 8:2-5. The Trustee asked Mr. Miller if the land was encumbered, to which Mr. Miller replied: "Free and clear, no debt. The state has a lien against the stock. I had filed a motion to avoid their lien for various reasons that were submitted in a motion to the court." *Id.* at 8:12-16. Mr. Miller then testified that the property was listed with Craig Northrop at Long & Foster and stated: "The difficulty from the creditors' perspective is that the State of Maryland has a lien against the stock and I had filed a motion to avoid their lien. The judge has come back with a ruling that indicated that he denied the motion." *Id.* at 10:1-7. The Trustee did not explicitly inquire, and Mr. Miller did not disclose that the Millers only owned half of the stock of The Oaks, Inc.

On February 17, 2010, the Trustee filed a Motion for Order Abandoning Assets of the Estate, in which she sought authority, pursuant to 11 U.S.C. § 544(a), to abandon "The Oaks, Inc. Stock" and certain other assets not relevant to this appeal. ECF No. 1-3. In support of her motion, the Trustee stated that the interests "were of little or no value to the bankruptcy estate because of the substantial expenditure of time and costs, including attorney's fees, required to secure and liquidate those properties." *Id.* Appellants consented to the abandonment of the stock.

On February 24, 2010, the Bankruptcy Court denied the motion seeking to abandon the stock and other assets due to improper service. ECF No. 1-11. On February 24, 2010, the Trustee refiled the motion, which the Bankruptcy Court initially denied on the same grounds. The Bankruptcy Court later vacated its order denying the motion, and on March 29, 2010, the

Bankruptcy Court granted the motion to abandon certain assets and ordered the bankruptcy estate's claim to certain assets, including the stock, abandoned. ECF No. 1-17.

On April 12, 2010, the Trustee received a phone call from Barry Satlow, Esq., a Colorado attorney, who informed the Trustee that Appellants owned only 50% of The Oaks, Inc. stock. ECF No. 1-20. Mr. Satlow represented the owners of the other 50% of The Oaks, Inc. stock, Christopher C. Meyer, Don C. Meyer, Kurt L. Myer and Eunice K. Meyer (collectively "the Myers"). *Id.* None of the Myers was listed on Appellants' Schedules and, therefore, had received no notice of the bankruptcy proceedings or the motions to abandon assets. In an April 22, 2010 letter to the Trustee, Mr. Satlow confirmed the telephone conversation and submitted an offer, on behalf of his clients, to purchase the Appellants' 50% share of The Oaks, Inc. stock for $10,000. ECF No. 1-20. A check in the amount of $10,000, made payable to the Trustee, was enclosed with the letter. *Id.*

On May 4, 2010, the Trustee moved, pursuant to 11 U.S.C. § 363(b), to sell The Oaks, Inc. stock despite its prior abandonment. ECF No. 1-19. On May 28, 2010, Appellants opposed the Trustee's motion. ECF No. 1-23. The Bankruptcy Court held a hearing on June 7, 2010, and at that hearing, the Bankruptcy Court instructed the Trustee to conduct an auction of the stock. ECF No. 4-2.

On July 21, 2010, the Trustee conducted an auction of the stock in the Bankruptcy Court courtroom. The Myers—the 50% owners of The Oaks, Inc. stock—were the only bidders. On July 23, 2010, the Bankruptcy Court entered an order authorizing the Trustee to sell the Appellants' shares of The Oaks, Inc. to the Myers for $10,000. ECF No. 1-29. On August 6, 2010, Appellants filed a Notice of Appeal from the order authorizing the sale, accompanied by a

Motion to Stay Pending Appeal.  ECF No. 1-32.  The Bankruptcy Court entered a stay pending appeal on August 24, 2010.  ECF No. 1-36.

Appellants submitted a brief in support of their appeal on September 23, 2010.  ECF No. 3.  The Trustee submitted her brief on October 12, 2010.  ECF No. 4.  On November 8, 2010, without leave of the Court, Appellants submitted a "First Amendment to: Appellant(s) Debtor(s) Miller Brief."  ECF No. 5.  In addition, Appellants filed a reply brief on November 12, 2010.  ECF No. 6.

On November 22, 2010, the Trustee moved to strike both the "First Amendment to: Appellant(s) Debtor(s) Miller Brief" and Appellants' reply brief.  ECF Nos. 7, 8.  The Trustee argued that the briefs should be stricken because they were untimely filed and filed without leave of the Court.  *Id.*  On December 7, 2010, Appellants filed an "Emergency Motion for Leave of the District Court and [*sic*] Emercency Motion for Extended Time to File Briefs/Documents," requesting that the Court grant them an extension of time in which to oppose the Trustee's motions to strike, and further grant them a blanket, forty-five day extension of time in which to respond to all future filings.  ECF No. 9.  The Trustee opposed this motion.  ECF No. 10.

On December 15, 2010, the Court granted Appellants leave to file any opposition to the Trustee's motions to strike on or before January 3, 2011, but denied Appellants' request for a blanket, forty-five day extension of time in which to respond to all future filings.  ECF No. 11.  Appellants filed an opposition to the Trustee's motions to strike on January 3, 2011.  ECF Nos. 12, 13.  On January 21, 2011, Appellants filed another "Supplemental Memorandum" in support of their appeal.  ECF No. 14.

**DISCUSSION**

When reviewing a bankruptcy court's final order, the district court acts as an appellate court. Accordingly, legal conclusions are reviewed *de novo*, and findings of fact may be set aside only if clearly erroneous. *See In re Banks*, 299 F.3d 296, 300 (4th Cir. 2002).

Appellants challenge only one order of the Bankruptcy Court in this appeal: the order authorizing the Trustee to sell Appellants' shares of stock in The Oaks, Inc. to the Myers for $10,000. The Trustee argues that Appellants lack standing to maintain this appeal because reversal of the Bankruptcy Court's order would neither restore solvency to the bankruptcy estate nor provide the debtors with a surplus. ECF No. 4 at 12.

Because standing implicates the Court's subject-matter jurisdiction, it may appropriately be considered on appeal. *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 12(h)(3), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Court "has an independent obligation to assess its subject-matter jurisdiction, and it will raise a lack of subject-matter jurisdiction on its own motion." *See CSX Transp., Inc. v. Transportation-Communications Intern. Union*, 413 F. Supp. 2d 553, 565 (D. Md. 2006) (citing *Insurance Corp. of Ireland, Ltd. V. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)) (internal quotations omitted).

"To satisfy the standing requirement of the case-or-controversy limitation on judicial authority found in Article III, Section 2 of the Constitution, the party invoking federal court jurisdiction must show that (1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) *it is likely, and not merely speculative, that the injury will be redressed by a favorable decision.*" *Long Term Care Partners, LLC*, 516 F.3d at 230-31 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added).

"It is well established that an insolvent Chapter 7 debtor lacks standing to challenge case administration matters because the debtor lacks a pecuniary interest in the distribution of assets among the debtor's creditors." *In re Fischer*, 2010 WL 2746329, at *5 (Bankr. D. Md. July 9, 2010). The Fourth Circuit has held that an insolvent Chapter 7 debtor lacks standing to challenge the proposed sale of his primary asset where an alternative offer, if accepted by the trustee, would neither have restored solvency to the bankruptcy estate nor have provided the debtor with a surplus. *Willemin v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985). The Court reasoned that in circumstances where reversal of a trustee's sale of an asset for a given price would not yield a financial benefit for the debtor—as in the case of a surplus or where an alternative sale would render the debtor solvent—the debtor lacked a pecuniary interest in the outcome of the appeal. *Id.* at 1022. The Court concluded that because the debtor lacked a pecuniary interest in the outcome of the appeal, the debtor lacked standing to pursue the appeal. *Id.*

The Trustee argues that like the debtor in *Willemin*, Appellants lack standing to appeal the Bankruptcy Court's order authorizing her to sell their shares in The Oaks, Inc., because reversal of that order would neither render the bankruptcy estate solvent nor result in a surplus being distributed to the debtor.

There is no dispute that the bankruptcy estate is insolvent; indeed, the insolvency of the bankruptcy estate is apparent from the record. Appellants own only 50% of The Oaks, Inc. stock, the estate's sole asset, an asset they valued in their Schedule B as having a value of $282,820.00. Because there are federal and state tax liens totaling $689,573.41 on all of Appellants' property, even a sale of the stock for its full value would not result in a surplus for Appellants. A reversal of the Bankruptcy Court's order would not render the estate solvent and would not produce a surplus for Appellants. Accordingly, under the holding of *Willemin*, Appellants lack standing to pursue this appeal.

Appellants argue that they have standing to pursue this appeal because they will, in the future, benefit financially from the sale of their stock in The Oaks, Inc., and they will be able to use proceeds from this sale to pay off their non-discharged debt. In support of their argument, Appellants cite *McGuirl v. White*, 86 F.3d 1232 (D.C. Cir. 1996).

In *McGuirl*, the Court of Appeals for the District of Columbia held that non-discharged debtors with an insolvent estate had standing to challenge the trustee's application for administrative expenses. *Id.* at 1235-36. The Court reasoned that the award of an excessive fee award would reduce the funds otherwise available to pay creditors to whom the debtors would remain directly liable on their non-discharged debts. *Id.* at 1236. The Court concluded that because the debtors had a direct, pecuniary interest in the amount of the fee award, they had standing to challenge the amount of that award. *Id.* at 1235-36.

Appellants' argument that, like the debtors in *McGuirl*, they have a direct, pecuniary interest in the reversal of the Bankruptcy Court's order authorizing the sale of their shares of stock in The Oaks, Inc. is not persuasive. Appellants *speculate* that they will *eventually* be able to develop the 4.5 acre property owned by The Oaks, Inc., sell their shares for a profit of $282,820, and use the profit to pay off their non-discharged debts. *See* Appellants' Reply, ECF No. 6 at 6-7.

Such speculative "benefits" which might flow from reversal of the Bankruptcy Court's Order are insufficient to establish Appellants' standing. There is simply no evidence that Appellants will be able to realize a $282,820 profit from the sale of their shares in The Oaks, Inc. *at some unspecified point in the future*. Appellants' speculation that the real estate market will rebound, that they will be able to develop the property, and that they will then be able to sell their stock for a profit is exactly the kind of speculation that cannot establish standing. Unlike the debtor in *McGuirl*, appellants have not shown that the reversal of the Bankruptcy Court's ruling will result in a non-speculative, direct financial benefit to them—they have only argued that if the Bankruptcy Court's Order is reversed *and* they are able to develop the land and sell their stock, they stand to gain financially. Because Appellants cannot show that they have a direct, pecuniary interest in the reversal of the Bankruptcy Court's order authorizing the Trustee to sell their shares of stock in The Oaks, Inc., they lack standing to pursue this appeal. Accordingly, this Court lacks subject-matter jurisdiction and the appeal shall be dismissed. Appellees' Motions to Strike will be denied as moot. A separate order follows.

<u>August 23, 2011</u>                   <u>      /s/      </u>
Date                                          Peter J. Messitte for Roger W. Titus
                                                     United States District Judge